IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:23-cv-01204-CNS-NRN

DILIP BALAKRISHNAN,

    Plaintiff,

v.

TTEC DIGITAL LLC, a Colorado limited liability company,

    Defendant.

## ORDER

    Defendant/Counterclaim Plaintiff TTEC Digital LLC moves for summary judgment on Plaintiff Dilip Balakrishnan's two claims and on its affirmative claim for breach of contract, for which it seeks specific performance. ECF No. 150. Plaintiff responded in opposition, ECF No. 159, and Defendant replied, ECF No. 170. For the reasons explained below, the Court grants in part and denies in part Defendant's motion.

### I. FACTUAL BACKGROUND

    This case arises from the parties' execution of a February 7, 2020 Stock Purchase Agreement (SPA). ECF No. 150, ¶ 84; ECF No. 151-35 (SPA). In executing the SPA, Defendant acquired 70% of Serendebyte Inc., the company Plaintiff founded. ECF No. 150, ¶ 25. Plaintiff contends that he sold 70% of his company to Defendant after Defendant represented that it could provide Serendebyte access to Defendant's large enterprise customers, and that Serendebyte could leverage Defendant's sales teams to

1

sell Serendebyte's services. ECF No. 159 (Plaintiff's statements of additional disputed facts), ¶ 6. Plaintiff, however, argues that Defendant lacked the capacity to promote and sell Serendebyte, causing Serendebyte's revenue to plummet. *Id.*, ¶¶ 15–18. On May 8, 2023, Plaintiff's counsel sent Defendant a litigation settlement demand, stating that

> Mr. Balakrishnan believes that TTEC has failed and/or refused to perform its obligations under the SPA in good faith, which has impeded the Company's ability to maximize the Aggregate Buyout Consideration Amount ("ABCA"). The ABCA provides the basis for the Rollover Shareholders' realization of a reasonable return upon their exercise of the Option. The ability to obtain a reasonable return was one of the foundational factors on which Mr. Balakrishnan and the Company decided to enter into the Transaction. Moreover, TTEC's failure to perform its obligations, and its refusal to provide any meaningful support in furtherance of the Company's growth, raise serious concerns regarding whether the Transaction was entered into by TTEC in good faith.

ECF No. 150, ¶ 100; ECF No. 47-2 (letter from Jayaram Law to Defendant). It does not appear that Defendant responded to Plaintiff's letter prior to Plaintiff filing suit on May 12, 2023—five days after Plaintiff's counsel sent the litigation settlement demand.

After filing this lawsuit in May 2023, on December 8, 2023, Plaintiff attempted to sell the remaining 30% of Serendebyte to Defendant. ECF No. 150, ¶ 110; ECF No. 150-63 (Put Option letter signed by Plaintiff). The SPA permitted Plaintiff, on behalf of Serendebyte's rolling shareholders (including himself), to sell the remaining 30% during the period of January 31, 2023, to December 31, 2023, which the SPA defines as the "Put Option." ECF No. 151-35 at 46 (§ 8.02). The buyout price for the remaining 30% of Serendebyte was based on Serendebyte's financial performance over the previous three-year period. *Id.* at 2 (defining pre-agreed formula).

Plaintiff's exercise notice calculated the remaining 30% of the shares at $300,000. ECF No. 150-63 at 1. Plaintiff identified the Put Purchase date as February 6, 2024. *Id.* Defendant agreed to process the Put Option request, provided that Plaintiff complied with his obligations under §§ 8.02 and 8.04. According to Defendant, these obligations include signing a full release of all claims against Defendant, including this lawsuit. ECF No. 150, ¶ 112; ECF No. 150-64 (Defendant's response to Plaintiff's Put Option letter). Plaintiff refused, claiming that §§ 8.02 and 8.04 do not require a release for the Put Option to be exercised. ECF No. 159, ¶ 112; ECF No. 150-65 (Put Option reply letter).

## II. PROCEDURAL BACKGROUND

As noted, Plaintiff initiated this lawsuit on May 12, 2023. ECF No. 1. He alleged that Defendant breached its implied obligation under the SPA to support Serendebyte, and that Defendant fraudulently induced him to execute the SPA by falsely representing that it could and would support Serendebyte after the 70% acquisition. *See generally id.*; ECF No. 47 (Am. Compl.).

On November 16, 2023, after hearing argument, the Court dismissed without prejudice Plaintiff's claims of breach of the implied duty of good faith and fair dealing, unjust enrichment, and negligent misrepresentation, but it permitted him to proceed with his fraudulent inducement claim. ECF No. 44. Plaintiff filed his Amended Complaint shortly thereafter, maintaining his fraudulent inducement claim and adding a breach of indemnification claim pursuant to the terms of the SPA. ECF No. 47.

Since Plaintiff exercised the Put Option on December 8, 2023—seven months after filing his lawsuit—the parties have engaged in back-and-forth arguments concerning the

3

purported release. ECF No. 150, ¶¶ 36–47 (setting forth purported undisputed facts concerning the release provisions); ECF No. 159 (denying the facts in ¶¶ 36–47). Having reached an impasse, on January 30, 2024, Defendant filed an Amended Answer to Plaintiff's Amended Complaint, and at the same time, filed two counterclaims. ECF No. 67. Defendant first seeks a declaratory judgment that the SPA requires Plaintiff to "execute a full release" of his claims. *Id.*, ¶¶ 77–96. Defendant's second claim for breach of contract seeks specific performance of the SPA (i.e., requiring Plaintiff to execute a full release of all claims including the instant action). *Id.*, ¶¶ 97–124.

The same day it filed its counterclaims, Defendant filed a motion for declaratory judgment and motion for specific performance. ECF Nos. 68, 70. Shortly after Defendant filed its motions, on February 13, 2024, Plaintiff moved to dismiss Defendant's counterclaims. ECF No. 77. Although there were others, the central issue before the Court in those motions was whether the SPA requires Plaintiff to sign a full release of all claims prior to executing the Put Option.

Beginning with Defendant's motions, Defendant sought a declaration that Plaintiff triggered an obligation to execute a release pursuant to § 8.02 of the SPA. ECF No. 68 at 7. Defendant asserted nearly identical arguments in its motion for specific performance—asking the Court to order Plaintiff to execute a full release of his claims. ECF No. 70. The Court denied both motions for the same reason: it determined that "release," as used in the SPA, is ambiguous. ECF No. 99 (order) at 11–12. To start, the SPA fails to identify any of the essential terms typically found in broad, enforceable releases (e.g., identifying the releasing and released parties, the timeframe of the release,

4

and the scope of the release or claims being released). *Id.* Instead, the SPA requires Plaintiff to deliver "an executed release in the form of Schedule 8.04"—a schedule which does not exist. *Id.* The Court went on to note that, at that stage, Defendant failed to provide any evidence of what the parties intended when they used the term release in the SPA, much less that it unequivocally meant "a full, final release" as Defendant contends. *Id.* (finding that, "[h]ad the parties, each sophisticated and represented by counsel, intended 'release' to mean 'full release' or 'complete release' in the SPA, they could have said so").

Turing to Plaintiff's motion to dismiss, ECF No. 77, the Court first dismissed without prejudice Defendant's declaratory judgment claim as duplicative of its breach of contract claim. ECF No. 99. However, the Court declined to dismiss Defendant's breach of contract claim. Plaintiff argued that Defendant's breach of contract claim was subject to dismissal because § 8.04 of the SPA is unenforceable as indefinite, and Defendant failed to sufficiently plead that it was damaged by the alleged breach. ECF No. 77 at 7–10. The Court explained that, based on the record before it, it could not conclude as a matter of law that "release," as used in the SPA, is indefinite. ECF No. 99 at 15–16. In a footnote, however, the Court noted that Plaintiff asked for the opportunity to "elicit evidence—such [as] communications between Plaintiff and Defendant, communications internal to Defendant, and other evidence of the Parties' intent—showing that the Parties never agreed on the terms of a release under Section 8.04." *Id.* at 15 n.5 (quoting ECF No. 81 at 14–16).

Finally, on August 23, 2024, Defendant moved for summary judgment on each remaining claim in this lawsuit. ECF No. 150. That is the motion presently before the Court.

### III. LEGAL STANDARDS

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003) (internal quotations and citation omitted); Fed. R. Civ. P. 56. The factual record and reasonable inferences must be construed in the light most favorable to the nonmoving party. *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). The moving party bears the initial burden, but once met, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986). Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

### IV. ANALYSIS & ORDER

The Court will first address Plaintiff's two causes of action and then turn to Defendant's request for specific performance.

6

### A. Plaintiff's Fraudulent Inducement Claim

Defendant argues that Plaintiff's fraudulent inducement claim is time-barred by Delaware's three-year statute of limitations.[1] ECF No. 150 at 17. The Court explains below why it agrees with Defendant.

#### i. Defendant's Purported Fraudulent Representations

Plaintiff identified eight representations that he contends induced him into executing the SPA on February 7, 2020. ECF No. 150, ¶ 16. Thus, the parties agree that February 7, 2020, is the last possible date that his claim could have accrued. ECF No. 159 at 21; ECF No. 170 at 10–11. And because Plaintiff filed his suit on May 12, 2023, Defendant argues that his fraudulent inducement claim is time-barred by the relevant three-year statute of limitations. ECF No. 150 at 17.

Plaintiff argues in response that the statute of limitations was tolled. ECF No. 159 at 21. He relies on the "discovery rule" and the "fraudulent concealment" doctrines. ECF No. 159 at 21. The entirety of his argument is that

> [h]ere, the falsity of Defendant's statements did not become clear to Plaintiff until January 2021. SOAF ¶ 16.[2] Plaintiff

---

[1] The SPA is governed by Delaware law. ECF No. 151-35, § 9.10(a) ("This Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware . . . ."). Therefore, the Court will apply Delaware substantive law but federal procedural law. *See Friends of Tuhaye, LLC v. Tuhaye Homeowners Ass'n*, 777 F. App'x 903, 907 (10th Cir. 2019).

[2] In his Statement of Additional Disputed Fact (SOAF) 16, Plaintiff states that the "falsity of Defendant's representations became clear to Plaintiff over time, beginning in around July 2020. Initially Defendant reassured Plaintiff that it could and would fulfill its promises to support Serendebyte and continued to reassure him for many months. It did not become clear to Plaintiff that Defendant could not or would not fulfill its promises until January 2021. Ex. 4 at 43-44, No. 11." The fourth exhibit he cites is his response to Defendant's first set of interrogatories. *See* ECF No. 160-2. His vague answer to this interrogatory is similar to SOAF 16, stating that, "[s]everal months after the SPA was executed, Plaintiff became concerned about whether Defendant could and would fulfill the representations identified in response to Interrogatory Nos. 1, 2, 3, and 4, and first addressed his concerns with Defendant in July 2020. Defendant reassured Plaintiff that it could and would fulfill those representations, and continued to do so for many months. Plaintiff's investigation continues." *Id.* at 43–44. Plaintiff has made no effort to identify exactly when in the "several months" after executing the SPA that he suspected Defendant made misrepresentations.

7

> initially suspected the falsity in around July 2020, but Defendant reassured him for many months. *Id.* Thus, the earliest the statute could have begun is July 2020, less than three years before he filed suit. ECF No. 1.

*Id.*

### ii. Delaware Law Governing Statute of Limitations

Delaware's three-year statute of limitations applies to Plaintiff's fraudulent inducement claim. *Techview Invs. Ltd. v. Amstar Poland Prop. Fund I, L.P.*, No. CVN20C11229EMDCCLD, 2021 WL 3891573, at *9 (Del. Super. Ct. Aug. 31, 2021) (citing 10 Del. C. § 8106 for support that "Delaware's statute of limitations for a claim for fraudulent inducement is three years"). Under § 8106, fraudulent inducement claims begin to accrue at the time of the wrongful act, even if the plaintiff is unaware at the time of the wrongful act. *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004) ("This Court has repeatedly held that a cause of action 'accrues' under Section 8106 at the time of the wrongful act, *even if the plaintiff is ignorant of the cause of action*." (emphasis added)).

Plaintiff's fraudulent inducement claim thus "accrues when the fraudulent statements were made, which must be on or before the date when the parties entered into the contract." *Pivotal Payments Direct Corp. v. Planet Payment, Inc.*, 2015 WL 11120934, at *4 (Del. Super. Ct. Dec. 29, 2015) (citations omitted). Finally, "[w]hen a complaint asserts a cause of action that on its face accrued outside the statute of limitations, the plaintiffs have the burden to plead facts leading to a reasonable inference that one of the tolling doctrines adopted by Delaware courts applies." *Winklevoss Capital*

*Fund, LLC v. Shaw*, 2019 WL 994534, at *5 (Del. Ch. Mar. 1, 2019) (internal quotation marks and citations omitted).

     iii. *Tolling of the Statute of Limitations Under Delaware Law*

Under Delaware law, even after a cause of action accrues, "the running of the limitations period can be tolled in certain limited circumstances." *Wal-Mart*, 860 A.2d at 319 (citation and quotations omitted). As noted, Plaintiff invokes two of these limited exceptions. First, under the discovery rule, "the statute is tolled where the injury is inherently unknowable and the claimant is blamelessly ignorant of the wrongful act and the injury complained of." *Id.* (citation and quotations omitted). "[A] plaintiff must establish that there were no observable or objective factors to alert her to the injury" for the doctrine to be applicable. *Lee v. Linmere Homes, Inc.*, No. CIV.A. 08C-03-008PLA, 2008 WL 4444552, at *3 (Del. Super. Ct. Oct. 1, 2008). If shown, "the statute will begin to run only upon the discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of such facts." *Wal-Mart*, 860 A.2d at 319 (citation and quotations omitted).

Second, under the fraudulent concealment rule, "a plaintiff must prove that the defendant knowingly acted to prevent [the] plaintiff from learning facts or otherwise made misrepresentations intended to put the plaintiff off the trail of inquiry." *Krahmer v. Christie's Inc.*, 911 A.2d 399, 407 (Del. Ch. 2006) (citation and quotations omitted). To establish fraudulent concealment, "the evidence must show that the defendant engaged

in some sort of 'actual artifice' to toll the running of the limitations period." *Id.* (quoting *Truitt v. Beebe Hosp.*, 514 A.2d 1128, 1131 (Del. Super. 1986).

      *iv.*    *Timeliness of Plaintiff's Fraudulent Inducement Claim*

It is undisputed that Plaintiff's fraudulent inducement claim began to accrue on or before the parties entered the SPA on February 7, 2020. Indeed, Delaware law requires that the statements forming a fraudulent inducement claim were made on or before entering the contract. *Pivotal Payments Direct Corp.*, 2015 WL 11120934, at *4. Plaintiff's fraudulent inducement claim is thus time-barred unless he can show that the statute of limitations was tolled. The Court finds that he has not done so.

Plaintiff presents the identical argument to support his two tolling theories: that Defendant somehow, after entering the SPA, "reassured" Plaintiff that it could and would fulfill the representations that it made prior to entering the SPA. ECF No. 159 at 21. But Plaintiff fails to say who reassured him that Defendant would fulfil its promises. He fails to say what reassurances the unidentified individuals made. And he does not say when those reassurances were made (except that they were made shortly after the parties entered the SPA). At the summary judgment stage, such conclusory and self-serving statements are insufficient. *Anderson*, 477 U.S. at 256 (the nonmovement must "set forth specific facts showing that there is a genuine issue for trial"); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005) ("We have long held that conclusory allegations without *specific* supporting facts have no probative value." (emphasis added)); *D'Avanzo v. Glob. Credit & Collection Corp.*, No. 10-CV-01572-RPM-CBS, 2011 WL 2297697, at *2 (D. Colo. Apr. 18, 2011) ("Conclusory statements in either pleadings or

affidavits cannot support summary judgment."), *report and recommendation adopted*, No. 10-CV-01572-RPM-CBS, 2011 WL 2292190 (D. Colo. June 9, 2011).

It is also clear from the face of the complaint that Plaintiff's claim accrued outside the statute of limitations. He therefore carried the "burden to plead facts leading to a reasonable inference that one of the tolling doctrines adopted by Delaware courts applies." *Winklevoss Capital Fund*, 2019 WL 994534, at *5 (internal quotation marks and citations omitted). He failed to do so. Concerning the unspecified reassurances from unspecified individuals, the Court can find no such allegations in Plaintiff's complaint, and Plaintiff has not cited any. The only reference to reassurances appears in paragraph 35, but those reassurances were made in October 2019—prior to entering the SPA. Accordingly, in addition to failing to present competent evidence to support either tolling doctrine, Plaintiff failed to plead facts that either doctrine applies. *Hillblom v. Wilmington Tr. Co.*, No. 2021-1034-MTZ, 2022 WL 17428978, at *11 (Del. Ch. Dec. 6, 2022) (the plaintiff bears "the burden of pleading facts leading to a reasonable inference" that the statute of limitations should be tolled and that his injuries were inherently unknowable) (citations omitted).

Finally, Plaintiff fails to show that he is a "blamelessly ignorant" plaintiff—the type of litigant the discovery rule is designed to protect—and that his alleged injury was "inherently unknowable." *Wal-Mart*, 860 A.2d at 319 (citation and quotations omitted). For example, in *Halosil Int'l, Inc. v. Eco-Evolutions, Inc.*, a Delaware federal judge applying Delaware law considered the timeliness of a breach of contract claim involving an allegedly fraudulent patent application. No. CV 18-1375-RGA, 2020 WL 3971722, at *2–

11

3 (D. Del. July 14, 2020). The plaintiffs argued that the breach occurred when the defendant filed the provisional patent, which identified the defendant as the owner of the invention. *Id.* at *3. The court noted, however, that patent applications "are initially confidential, so Defendants could not be expected to know of the application just because it was filed," thus making the injury inherently unknowable.[3] *Id.*

Defendant's alleged breach is distinguishable from this example. Plaintiff alleged that "TTEC was recklessly indifferent to whether it had the capability" to "integrate the Company into TTEC's sales, customer, and marketing network as it had promised." ECF No. 47, ¶ 60. But this is not the type of inherently unknowable injury that Delaware law contemplates, and Plaintiff cites no authority to the contrary. Nor was Plaintiff blamelessly ignorant; he was represented by counsel and had every opportunity to conduct a thorough due diligence of Defendant's capabilities. *See* ECF No. 151-35 (SPA) at 49; ECF No. 150, ¶ 11.

Plaintiff also failed to provide any authority that his cause of action tolls until the alleged fraud became "clear to Plaintiff." ECF No. 159 at 21. That is not the standard in Delaware. "[A] plaintiff must establish that there were no observable or objective factors to alert [him] to the injury"—not simply that the alleged fraud was not clear to him—for the discovery rule to toll the statute of limitations. *Lee v. Linmere Homes, Inc.,* 2008 WL 4444552, at * 3 (Del. Super. Oct.1, 2008). And under the fraudulent concealment rule, he

---

[3] Despite this finding, the *Halosil* court found that the plaintiffs were not blamelessly ignorant because they received emails suggesting that a patent had been filed, and therefore plaintiffs at some point had discovered facts "sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of such facts [constituting the basis of the cause of action]." *Halosil Int'l, Inc.*, No. CV 18-1375-RGA, 2020 WL 3971722, at *3 (D. Del. July 14, 2020) (citation and quotations omitted).

12

must prove that Defendant knowingly took steps to prevent him from learning that it lacked the capability to support Serendebyte or made statements intended to put Plaintiff "off the trail of inquiry." *Krahmer*, 911 A.2d at 407 (the evidence must show that the defendant engaged in some sort of "actual artifice" (citation omitted)). There is insufficient evidence to making this showing.

Finally, Plaintiff has not alleged or presented any evidence that the actions of a third party prevented him from learning of Defendant's alleged misrepresentations. *See Pioneer Nat'l Title Ins. Co. v. Sabo,* 432 F. Supp. 76, 79 (D. Del. 1977) (the discovery rule is designed to protect a blamelessly ignorant plaintiff, "particularly where the 'triggering' of the cause of action depends on the action of a third party").

To summarize, in Plaintiff's three-sentence argument, he presented no competent evidence or authority to suggest that (1) the injury he complains of was inherently unknowable, (2) he was blamelessly ignorant of the cause of action, or (3) Defendant knowingly concealed facts to put him off the trail of inquiry. *Krahmer*, 911 A.2d at 407. His failure to make these showings means that his claim accrued, at the latest, when he entered the SPA with Defendant, and his claim did not toll under either cited doctrine. Because he entered the SPA more than three years before filing his lawsuit, his fraudulent inducement claim is time-barred. *Lynch v. Barba*, No. CV 12083-MG, 2018 WL 1613834, at *8 n.56 (Del. Ch. Apr. 3, 2018), *adopted*, (Del. Ch. 2018) ("[T]he plaintiff's ignorance of the facts is no obstacle to the operation of a statute of limitations.").

The Court grants summary judgment on Plaintiff's fraudulent inducement claim.

### B. Plaintiff's Breach of Contract Claim

Plaintiff alleges that Defendant failed to comply with the SPA's implied covenant of good faith and fair dealing when it refused to support Serendebyte's growth and actively hindered its growth to artificially deflate Serendebyte's value. ECF No. 47, ¶¶ 91–110. Plaintiff argues that he was damaged as a direct and proximate result of Defendant's failures. *Id.* The alleged losses prompted Plaintiff to send a letter to Defendant on March 8, 2023, giving notice of the losses. *Id.* Defendant rejected Plaintiff's request to reimburse him for his alleged losses. *Id.* Plaintiff now claims that Defendant breached the SPA's indemnification provision.[4]

Defendant lodges several attacks against Plaintiff's claim, including that he cannot establish that Defendant "had an *obligation to* indemnify [Plaintiff], *i.e.*, breached an obligation pursuant to the Agreement," and that his damages are precluded by the SPA. ECF No. 150 at 22–28.

Whether Defendant complied with its implied obligation to support, or at least not hinder, Serendebyte's growth is a fact dispute that precludes summary judgment. *See* ECF No. 159, ¶¶ 85–93; *id.*, ¶¶ 10–11, 14, 15, 17–19 (Plaintiff's statement of additional disputed facts).[5] So too is the measure of Plaintiff's damages, if any, *id.*, ¶ 108, and

---

[4] Specifically, Plaintiff alleges that Defendant breached § 7.04 of SPA, "Indemnification By Buyer," which provides that "Buyer shall indemnify Shareholder Parties against, and shall hold Shareholder Parties harmless from and against, any and all Losses incurred or sustained by, or imposed upon, Shareholder Parties based upon, arising out of, with respect to or by reason of . . . (b) any breach or non-fulfillment of any covenant, agreement or obligation to be performed by Buyer pursuant to this Agreement." ECF No. 151-35 at 40.
[5] Defendant denies most of these additional facts. The Court merely cites them to highlight the significant disagreement over material facts.

14

whether Plaintiff properly perfected his claim by providing proper notice. *See* ECF No. 150, ¶ 104; ECF No. 159, ¶ 104.

Because of these genuine disputes of material fact, Defendant is not entitled to summary judgment on Plaintiff's breach of contract claim.

### C. Defendant's Request for Specific Performance

Defendant argues that Plaintiff breached the SPA by failing to execute a release after voluntarily exercising the Put Option on December 8, 2023. ECF No. 150 at 28. Defendant thus seeks a Court order requiring Plaintiff to release his claims (i.e., this lawsuit and all past and future claims) against Defendant. *Id.* Plaintiff continues to argue that § 8.04, titled "Release," does not include this lawsuit because the parties "never agreed to a 'full and final release' under Sections 8.02 and 8.04." ECF No. 159 at 34.

"Specific performance is an equitable remedy designed to protect a party's expectation under a contract by compelling the other party to perform its agreed upon obligation." *Sarissa Capital Domestic Fund LP v. Innoviva, Inc.*, No. 2017-0309-JRS, 2017 WL 6209597, at *26 (Del. Ch. Dec. 8, 2017) (citation omitted). "A party seeking specific performance must establish that (1) a valid contract exists, (2) [it] is ready, willing, and able to perform, and (3) that the balance of equities tips in favor of the party seeking performance." *Osborn ex. rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010).

The Court previously denied Defendant's motion for specific performance. ECF No. 99 (order). The Court first analyzed § 8.02 of the SPA. Section 8.02 of the SPA states as follows:

> **Put Option**. At any time during the Option Period, Majority Seller shall have the right and not the obligation to sell all (and

15

> not less than all) of the Retained Shares (as held by the Rolling Shareholders) to Buyer, *on the terms and conditions set forth in this Section 8.02* (the "**Put Option**").

ECF No. 151-35 at 46 (italics added). To effectuate the sale triggered by Plaintiff's exercise notice, he was required to

> enter into such documents and instruments as shall be reasonably necessary to facilitate the closing of the Put Sale, including . . . (2) *release from each Rolling Shareholder as set forth in Section 8.04 below* . . . . (5) such other . . . legal deliverables as reasonably requested by Buyer in order to effect the transactions contemplated hereunder and documentation of a surrender of the Retained Shares . . . .

*Id.* (§ 8.02(c)) (italics added). The Court then turned to the final piece of the puzzle, § 8.04, which states as follows:

> **Section 8.04 Release**. As a condition to each Rolling Shareholder receiving such Rolling Shareholder's Proportionate Buyout Consideration Amount, *each Rolling Shareholder will deliver to Buyer an executed release in the form of Schedule 8.04* at and effective as of the Call Purchase Date or Put Purchase Date and upon receipt of [] such Rolling Shareholder's Proportionate Buyout Consideration Amount.

*Id.* at 47 (italics added).

The Court explained that it was, and still is, undisputed that Schedule 8.04 was not attached to the SPA. ECF No. 99 at 7; ECF No. 150 at 29. Plaintiff continues to argue that Schedule 8.04 never even existed, ECF No. 159, ¶ 43, a fact that Defendant merely says is "immaterial and not supported by evidence." ECF No. 170, ¶ 43. Rather, Defendant points to the deposition of Stuart Crenshaw, Defendant's in-house counsel, as evidence of the parties' intent. Mr. Crenshaw testified that he and Vivek Jayaram, Plaintiff's counsel, "talked about the fact that [the release] would be a full and final release,

16

which is a common document used by transactional lawyers, which each of them represented themselves to be." ECF No. 151-14 at 43:19–22. He went on to testify that a full and final release meant a "release and relinquishment of all claims, whether known or unknown, present and in the future." *Id.* at 43:25–44:1.

Plaintiff cites to his own deposition testimony were he stated that a full release "was never discussed" and "never negotiated," and therefore, "this lawsuit should not be part of the release form." ECF No. 160-3 at 142:8–16. But what is missing from Plaintiff's summary judgment evidence is whether his counsel, Mr. Jayaram, discussed or negotiated the terms of the release. Plaintiff stated in discovery that he "lacks information sufficient to confirm or deny whether Jayaram Law discussed the concept of a 'release' as referenced in Sections 8.02 and 8.04 of the SPA with Stuart Crenshaw during the preparation of the SPA." ECF No. 151-1 at 7 (response to Defendant's request for admission). Critically, he does not provide any evidence that Mr. Jayaram (who continues to represent Plaintiff in this action) denies discussing the terms of the release with Mr. Crenshaw.

Plaintiff's scant evidence is just enough to preclude summary judgment in Defendant's favor on its specific performance claim. This matter is best left for trial to the Court where it can weigh the credibility of the witnesses' testimony concerning the scope of the release, especially given some of the *potentially* conflicting testimony from Mr. Crenshaw. *See, e.g.*, ECF No. 160-9 at 43:19–44:22 (testifying that he and Mr. Jayaram "talked about the fact that it would be a full and final release" but further testifying that the attorneys did not "agree on any specific terms of the release" because "both parties didn't

17

see . . . it as necessary because both parties understood what a full and final release meant"). After hearing testimony and other extrinsic evidence, the Court will be in a better position to understand, "to the extent possible, the reasonable shared expectations of the parties at the time they contracted." *Comrie v. Enterasys Networks, Inc.*, 837 A.2d 1, 13 (Del. Ch. Sept. 4, 2003).[6]

Moreover, Defendant continues to argue that the parties intended and understood "release" to mean a full, final release because that is custom in the industry. ECF No. 150 at 29. Plaintiff correctly points out that Defendant cites no industry data or expert on the meaning of "full and final release." ECF No. 159, ¶ 39. The only evidence Defendant cites is Mr. Crenshaw's testimony. As explained, the Court will weigh the credibility of this testimony during the bench trial. *See Comrie*, 837 A.2d at 13 (when analyzing ambiguous contract terms that may be susceptible of different interpretations, a court may consider extrinsic evidence, including "overt statements and acts of the parties, the business context, prior dealings between the parties, business custom and usage in the industry.").

For the above reasons, Defendant's request for specific performance is denied at this time.

## V.   CONCLUSION

Consistent with the above analysis, the Court grants in part and denies in part Defendant's motion for summary judgment, ECF No. 150.

---

[6] The Court agrees with Plaintiff that Defendant must establish that it was damaged by Plaintiff's alleged failure to release his claims before specific performance is warranted. *See Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 883 (Del. Ch. 2009). However, Defendant continues to argue that its damages are inferred in having to defend against his lawsuit, ECF No. 150 at 30, and Plaintiff cites no authority indicating that such harm is insufficient to establish damages.

DATED this 7th day of January 2025.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge